# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**Tashian Polk**  **Plaintiff**
o/b/o K.J.P.

### No. 4:15-CV-00209 JM-JTR

**Carolyn W. Colvin, Acting Commissioner,**  **Defendant**
**Social Security Administration**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge James M. Moody, Jr.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody may adopt the recommended disposition without independently

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

reviewing all of the record evidence.

## Reasoning for Recommended Disposition

Tashian Polk appeals the denial of her second application for child supplemental security income (SSI) for her son K.J.P.[3] Polk claims K.J.P. has been disabled since birth, but heart surgery triggered the application. Polk based disability on heart surgery, speech problems, a drooping left eye lid, bowel problems, and pancreatitis.[4] To receive SSI, Polk must prove K.J.P. was disabled as of, or after, applying for SSI;[5] that is, she must prove K.J.P. was disabled as of, or after, July 6, 2011, when K.J.P. was age 4 years, 7 months.

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ identified language disorder and cleft mitral valve defect-post repair as severe impairments.[6] The ALJ determined K.J.P. lacked an "extreme" limitation in one of six specified functional domains, or a "marked" limitation in at

---

[3]SSA record at p. 126 (applying on July 6, 2011 and alleging disability beginning Dec. 12, 2006); *id*. at p. 143 (indicating that prior application was denied on Nov. 7, 2007).

[4]*Id*. at p. 146.

[5]20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (claimant must prove she was disabled as of or subsequent to the protective filing date of application).

[6]SSA record at p. 15.

least two domains. Relevant to this review, the ALJ determined K.J.P. has a less than marked limitation in the domains of interacting and relating to others, and health and physical well-being.[7] The ALJ concluded that K.J.P. was not disabled and denied the application.[8]

After the Commissioner's Appeals Council denied a request for review,[9] the ALJ's decision became a final decision for judicial review.[10] Polk filed this case to challenge the decision.[11] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

---

[7]*Id.* at pp. 20 & 22.

[8]*Id.* at p. 22.

[9]*Id.* at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (explaining that the court will uphold the decision if it lacks legal error and is supported by substantial evidence).

**Polk's argument**.  Polk contends K.J.P. has marked limitations in interacting and relating to others, and in health and physical well-being.  She says the ALJ erred by determining otherwise.  She complains about the ALJ's reliance on K.J.P.'s academic record.  For these reasons, she contends substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles.**  At step three of the disability-determination process, the ALJ must determine whether a child's impairment meets or medically equals the severity requirements for a listed impairment.[14]  K.J.P.'s impairments are not severe enough to meet or medically equal a listed impairment, but he might functionally equal the listing.  To functionally meet the listing, his impairments must cause an "extreme" limitation in one domain or a "marked" limitation in at least two domains.[15]  A marked limitation exists if the child's impairments seriously interfere with his ability to independently initiate, sustain, or complete activities.[16]  The domains at issue are: (1) interacting and relating to others, and (2) health and well-being.

---

[13] Docket entry # 8.

[14] 20 C.F.R. § 416.924(d).

[15] 20 C.F.R. § 416.926a(a).

[16] 20 C.F.R. § 416.926a(e)(2).

**The evidence supports a less than marked limitation in interacting and relating to others**. The domain of interacting and relating to others considers how a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.[17]  A pre-school child like K.J.P. should do the following:

    (1) socialize with children as well as adults,

    (2) begin to prefer playmates the same age and start to develop friendships with children of the same age,

    (3) use words instead of actions to express himself,

    (4) be better able to share, show affection, and offer to help,

    (5) relate to caregivers with increasing independence,

    (6) choose his friends,

    (7) play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision,

    (8) initiate and participate in conversations, using increasingly complex vocabulary and grammar, and

    (9) speaking clearly enough that both familiar and unfamiliar listeners can understand what's said most of the time.[18]

---

[17] 20 C.F.R § 416.926a(i).

[18] *Id.*

K.J.P.'s language disorder implicates items 8 and 9, but Polk proved no marked limitation.

A speech-language pathologist identified a severe delay in K.J.P.'s articulation skills at age 3 years, 10 months. According to the speech-language pathologist, the delay interfered with the ability of others to understand K.J.P.'s speech.[19] The speech-language pathologist recommended speech therapy focusing on increasing speech intelligibility and receptive/expressive language skills.[20]

Nine months later, at age 4 years, 8 months, K.J.P.'s speech therapist reported a serious problem using adequate vocabulary and grammar in expression, but no problems in playing with other children, expressing anger appropriately, and respecting adults in authority; and a slight problem making friends, seeking attention appropriately, and following rules.[21] The therapist could understand most of K.J.P.'s speech.[22] The therapist's report identifies difficulty speaking intelligibly as a limitation, but it does not show language disorder seriously interfered with K.J.P.'s ability to independently initiate, sustain, or complete activities. The report weighs

---

[19]SSA record at p. 393.

[20]*Id*. at p. 394.

[21]*Id*. at p. 179.

[22]*Id*. at p. 181.

against a marked limitation because it showed K.J.P. played with children his age, developed friendships with children, used words instead of actions to express himself, and related to his care-givers.

By age 6 years, 4 months, K.J.P.'s school reported developmental progress. K.J.P. had friends at school, exhibited an age appropriate level of independence, worked with peers, waited to take turns, spoke in complete sentences, but he had weaknesses in identifying and producing rhyming words and blending and segmenting sounds in spoken words.[23] Difficulty producing certain sounds negatively affected K.J.P.'s ability to be easily understood by others.[24] Diagnostic testing classified his language delay as severe, but according to Polk, K.J.P.'s speech had improved.[25] This evidence shows K.J.P. was limited in the domain of interacting and relating to others because he had difficulty speaking intelligibly, but it does not show language disorder seriously interfered with his ability to independently initiate, sustain, or complete activities. The evidence shows no marked limitation.

**The evidence shows no marked limitation in health and physical well-being**. The domain of health and physical well-being considers the cumulative effects

---

[23]*Id*. at p. 510.

[24]*Id*. at p. 512.

[25]*Id*. at p. 510.

of a child's physical and mental impairments and their associated treatments or therapies on the child's functioning.[26]  For the domain of health and well-being, a child may have a marked limitation if he is frequently ill or has frequent exacerbations of his impairment that result in significant, documented symptoms or signs.[27]

A pediatric cardiologist evaluated K.J.P. at age 4 years, 4 months, for a congenital primum atrial septal defect and a cleft mitral valve.[28]  A primum atrial septal defect is a hole between the two upper chambers of the heart.[29]  Children born with the defect often have a gap, or a cleft, in the mitral valve that causes valve leaking called mitral regurgitation.  A surgeon repairs the defect by patching the hole using the child's tissue and closing the cleft using sutures.

K.J.P. underwent surgical repair at age 4 years, 6 months.[30]  Three weeks later, diagnostic testing showed some mild regurgitation, but good function.  K.J.P.'s activity had improved since surgery; he was playing and running through the

---

[26] 20 C.F.R. § 416.926a(l).

[27] 20 C.F.R. § 416.926a(e)(2)(iv).

[28] SSA record at p. 294.

[29] *See generally*, Tal Geva, Jose D Martins & Rachel M Wald, Atrial septal defects, 383 The Lancet 1921 (May 31, 2014).

[30] SSA record at p. 360.

sprinkler.[31] Two months after surgery, K.J.P. played more and got less tired.[32] Diagnostic testing showed mild regurgitation; post-surgery pancreatitis had resolved. The cardiologist felt K.J.P. could return to full activity.[33]

Nine months after surgery, the cardiologist felt K.J.P. was in very good shape; he had mild regurgitation.[34] The doctor encouraged physical activity. Two years after surgery, K.J.P. had more regurgitation — mild to moderate — but he was stable.[35] K.J.P. rode bicycles and played outside, with some shortness of breath with vigorous activity.[36] His cardiologist cleared him for surgery to fix a drooping eye lid.[37] According to the cardiologist, K.J.P.'s heart was doing well.[38]

The foregoing evidence shows K.J.P. was limited at some point in the domain of health and physical well-being because he underwent heart surgery, but it does not show heart surgery seriously interfered with the ability to independently initiate,

---

[31] *Id.* at p. 427.

[32] *Id.* at p. 419.

[33] *Id.* at pp. 420-21.

[34] *Id.* at p. 535.

[35] *Id.* at p. 538.

[36] *Id.* at p. 537.

[37] *Id.* at p. 538.

[38] *Id.*

sustain, or complete activities.

## Conclusion and Recommendation

Substantial evidence supports the decision that K.J.P. was not disabled from the application date to the date of the unfavorable decision, because the evidence establishes no extreme limitation in one domain or a marked limitation in two domains. The ALJ properly considered K.J.P.'s academic record in the domains of acquiring and using information, and attending and completing tasks. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING the request for relief (docket entry # 1) and AFFIRMING the decision denying the application.

Dated this 4th day of May, 2016.

_____
United States Magistrate Judge